FILED
JUNE 2, 2010
KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ALVIN COFFEE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:09-CV-081 |
| | § | |
| RICK THALER, | § | |
| Director, Texas Dep't of Criminal Justice, | § | |
| Institutional Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION**
**TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner ALVIN COFFEE has filed with this Court a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 320th District Court of Potter County, Texas, for the offense of robbery and the resultant eight-year sentence. For the reasons hereinafter expressed, the United States Magistrate Judge is of the opinion petitioner's application for federal habeas corpus relief should be DENIED.

I.
BACKGROUND

On May 11, 2005, petitioner Coffee walked into a Wal-Mart and began trying on shoes. (Reporter's Record [hereinafter RR], vol. 3, pgs. 13-14). Dusty Johnson, a loss-prevention officer working at Wal-Mart on that day, thought Coffee was acting suspiciously and observed him from a distance. (*Id.*). Coffee took off his old shoes, put on a pair of new shoes, left his old shoes in a basket in the shoe department, and went to the front of the store. (*Id.* at 14). Coffee got into line at the cash registers at the front of the store. (*Id.*).

At this point, Coffee's and Johnson's stories diverge. According to Johnson, Coffee waited in line for a while before suddenly taking off "in a dead sprint" out of the doors and into the parking lot. (*Id.* at 15). Johnson pursed Coffee, identifying himself as a loss-prevention officer and ordering Coffee to stop. (*Id.* at 16). Coffee continued to run. (*Id.*). At some point, however, Coffee stopped, turned around to face Johnson, and swung his fist at Johnson. (*Id.*). Johnson ducked out of the way of Coffee's fist, grabbing Coffee by the legs and pulling him down to the ground, where a wrestling match ensued. (*Id.*) During the scuffle, Johnson sustained a scrape on his arm. (*Id.* at 19). Two unidentified customers helped Johnson restrain Coffee and escort him back to the store. (*Id.* at 17). At trial, the prosecution presented two more witnesses. Albert Gonzalez testified he saw Johnson pursuing Coffee, Coffee swinging his fist at Johnson, and the two wrestling while Coffee was trying to escape. (*Id.* at 58-59). Tiffany Philley testified she was several feet behind the two and did not see anything between the time the two ran out of the store and the time she discovered them scuffling on the ground. (*Id.* at 78-79).

According to Coffee, he walked out of the store (intentionally stealing the shoes) when he realized the gift card he had intended to use to purchase the shoes was insufficient to pay for them. (*Id.* at 100). After getting to the middle of the parking lot, Coffee began to run. (*Id.* at 102). Johnson, who Coffee then realized was pursuing him, shouted out, "If you don't stop, I'm going to charge you with robbery." (*Id.*). Coffee stopped and turned around, but Johnson came running at Coffee. (*Id.*). Coffee stepped aside, and Johnson "slid on by." (*Id.* at 102-03). There was no wrestling match. (*Id.* at 105). Coffee testified he never swung at Johnson. (*Id.* at 103). The defense presented no one to corroborate Coffee's version of events.

The jury found Coffee guilty of robbery and sentenced him to eight years in prison. The judgment was affirmed on direct appeal. *Coffee v. State*, No. 07-06-0015-CR, 2008 WL 215728 (Tex. App.—Amarillo Jan. 25, 2008, no pet.). No petition for discretionary review was filed. On December 9, 2008, Coffee filed his state habeas corpus application. *In re Coffee*, WR-71,393-01. That application was denied without written order on February 4, 2009. Coffee filed his federal habeas corpus petition on March 10, 2009.

## II.
## PETITIONER'S ALLEGATIONS

By his petition, Coffee contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

1. He received ineffective assistance of counsel because his trial attorney failed to retrieve a security camera's videotape of the incident or elicit testimony regarding what the videotape showed.

2. The prosecution suppressed the videotape, in violation of *Brady*.[1]

## III.
## THE MERITS OF PETITIONER'S CLAIMS

### *A. Standard of Review*

Petitioner may not obtain habeas corpus relief in this Court with respect to any claim adjudicated on the merits in the state court proceedings unless the adjudication of the claim resulted in a decision that was contrary to clearly established federal constitutional law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

---

[1] Respondent reads the petition to bring three allegations–the two listed here and an argument that petitioner was denied equal protection. The Court does not read the petition, which contains the single statement, "Petitioner has been denied equal protection and due process of law," to raise an equal protection claim. (*Petition for a Writ of Habeas Corpus*, "Petitioner's Seperate [sic] Memorandum," pg. 1). If it did raise such a claim, however, respondent correctly points out that petitioner did not raise such a claim at the state level. Any such claim is not exhausted. *See* 28 U.S.C. § 2254(b)(1)(A), (c).

presented in the State court proceeding. 28 U.S.C. § 2254(d). Here, the Texas Court of Criminal Appeals heard and adjudicated, on the merits, both claims petitioner presents to this Court when it denied petitioner's application for state habeas relief without a written order. *See Barrientes v. Johnson*, 221 F.3d 741, 780 (5th Cir. 2000); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Petitioner's burden is significantly heightened in that he cannot prevail even if it is shown that the state court's determination was incorrect. Petitioner must also show the state court unreasonably applied federal law or made an unreasonable determination of the facts. *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002), *cert. denied Neal v. Epps*, 537 U.S. 1104 (2003).

Petitioner has failed to meet this burden. Rather than explaining why the state court's determination was incorrect, petitioner merely restates the points of error he presented to the state court. As detailed below, had petitioner correctly claimed unreasonableness or constitutional error by the state court, there is nothing in the record to support such a contention.

*B. Ineffective Assistance of Counsel*

Coffee first contends he received ineffective assistance of counsel because his trial attorney failed to either obtain the security camera's videotape of the incident or present testimony regarding what was on the tape. The proper standard for judging a petitioner's contention he is entitled to relief on the ground that his trial counsel rendered ineffective assistance is enunciated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Under the two-pronged *Strickland* standard, a petitioner must show defense counsel's performance was both deficient and prejudicial. *Id.* at 687, 104 S.Ct. at 2064.

An attorney's performance was deficient if the attorney made errors so serious he or she was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United

States Constitution. *Id.* That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession. A reviewing court's scrutiny of trial counsel's performance is highly differential. A petitioner must overcome the strong presumption that counsel's actions were sound trial strategy. *Id.* at 689, 104 S.Ct. at 2065; *Bell v. Cone*, 535 U.S. 685, 698, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002).

Additionally, a petitioner must show counsel's deficient performance prejudiced the defense. To establish this prong, a petitioner must show counsel's errors were so serious as to deprive petitioner of a fair trial. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Specifically, to prove prejudice a petitioner must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88, n. 4. (5th Cir.1993).

*1. No Deficient Representation*

In this case, petitioner has failed to demonstrate either prong of the *Strickland* test. The record supports the conclusion petitioner's attorney did not render deficient assistance for failing to retrieve the tape or elicit testimony about the tape's recordings. First, the record indicates petitioner's attorney actually did attempt to retrieve the tape. Petitioner's attorney filed a "Motion to Produce Evidence Favorable to the Defendant" requesting the trial court order the prosecution to

reveal its entire file on the case. (Clerk's Record, pg. 19). The trial court never ruled on the motion.

Second, the record indicates petitioner's attorney used the absence of the tape and chose not to elicit testimony about what the tape showed as part of a trial strategy to cast doubt on the testimony of the prosecution's witnesses. At trial, petitioner's attorney questioned Dusty Johnson about Wal-Mart's multiple security cameras:

Q. So everything that happened that day should have been on tape, shouldn't it?

A. Depending on where it was, yes, sir. . . .

Q. Anybody bother to produce that tape, look at it and see what happened?

A. We looked at it, but I didn't -- I don't think anybody made a copy of it or anything, no, sir.

Q. You looked at it?

A. Yes, sir.

Q. Has anybody ever asked you to produce that tape, or asked your store to produce the tape, that you're aware of?

A. Not that I'm aware of, no, sir.

Q. But you didn't bring it with you today?

A. No, sir. I don't work for Wal-Mart no more.

Q. Well, you would have access to it, wouldn't you?

A. Somebody should have access if they haven't recorded over it.

Q. How often do they record over them?

A. They usually use the tapes monthly.

Q. So even when an altercation like this occurs involving a robbery, they don't save that tape?

A. Sometimes they do, yes, sir.

Q. But if they had've -- if they would have had it, the district attorney's office could have gotten it, couldn't they?

A. At the time of it, probably, they probably could have gotten a copy of the tape, yes, sir. Like I said, now, if there's a copy or anything, I don't -- to my awareness, I don't know.

Q. It would have been very helpful if we had those witnesses.

THE COURT: Let's move along, please.

Q. (BY MR. McNEELEY) Or a copy of the tape to substantiate your testimony today, wouldn't it?

A. Yes, sir.

(RR, vol. 3, pgs. 55-57). When questioning Albert Gonzalez, petitioner's attorney asked:

Q. There are security cameras there at Wal-Mart, aren't there?

A. Yes, sir.

. . .

Q. Did they have a tape of this, to your knowledge?

A. From what they tell me, they did.

Q. They did have a tape?

A. Yes, sir.

Q. Have you seen that tape?

A. No, sir.

(RR, vol. 3, pgs. 72-73). Finally, in closing statements, petitioner's attorney urged:

Where are the photos from the cameras that would have cleared all this up so that you could have had something to look at that would have told whether or not he did these things? Why is it so convenient that nothing that would tend to exculpate or

> prove that my client didn't do this is in existence? Why is that? Isn't that convenient.

(RR, vol. 3, pg. 140).

Review of the record thus supports the strong presumption that (1) petitioner's attorney did try, albeit unsuccessfully, to retrieve the tape and (2) petitioner's attorney used the tape's absence and purposefully choose to not elicit testimony about the tape's contents as part of a reasoned trial strategy to cast doubt on the prosecution's witnesses. *See Bell*, 535 U.S. at 698, 122 S.Ct. at 1852. Petitioner has failed to demonstrate ineffective assistance. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

*2. No Prejudice*

Petitioner has additionally failed to demonstrate prejudice. *See id.* at 687, 104 S.Ct. at 2064. Petitioner has produced nothing indicating the videotape exists, and, if it does, what it shows. Petitioner fails to allege in his petition that the videotape or testimony about it would have exonerated him. In reality, the burden is on petitioner, and at this stage it has not been shown whether the security camera recorded the incident, whether it recorded the incident at a helpful angle, or whether it would show petitioner trying to punch Johnson.

There is nothing on the record to support a conclusion regarding what was on the tape. Because there is no way to determine what was on the tape, petitioner cannot demonstrate the result of the proceedings would have been different had the tape been available at trial. *See Creel*, 162 F.3d at 395. Petitioner has failed to demonstrate either prong of the *Strickland* test. His ineffective assistance of counsel claim is without merit.

*C. Prosecutorial Misconduct*

In his second point of error, petitioner contends the prosecutor suppressed the above-

discussed videotape of the altercation, in violation of *Brady*. To prevail on a claim under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), a petitioner must show (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material. *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992), *cert. denied*, 509 U.S. 925 (1993). A habeas petitioner is not entitled to relief based on conclusory and speculative allegations of a *Brady* violation. *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000).

In this case, petitioner Coffee has failed to demonstrate the prosecution ever possessed the tape. In fact, petitioner does not even know if the tape existed. (*Petition for a Writ of Habeas Corpus*, "Petitioner's Seperate [sic] Memorandum," pg. 1 ("It has been established that a video tape of the events exists or did exist)). Testimony at trial indicates the recording may have been erased. (RR, vol. 3, pg. 56). If the tape did not exist or if Wal-Mart did not give the tape to the prosecution, the prosecutor could not have turned it over to defense. Petitioner has failed to demonstrate intentional suppression.

Petitioner additionally fails to demonstrate the evidence was favorable to the defense. As reviewed above, there is no way of knowing what, if anything, the security cameras recorded. Petitioner does not assert the tape would have supported his version of events. Assuming petitioner meant to make such an assertion, a speculative allegation of what an unseen (and possibly non-existent) videotape may have shown is insufficient to meet the *Brady* requirements. *See Murphy*, 205 F.3d at 814. Petitioner has failed to demonstrate the prosecution violated *Brady*. His second ground of error is without merit.

## IV.
## RECOMMENDATION

Petitioner has failed to present any meritorious claim warranting federal habeas corpus relief.

Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner ALVIN COFFEE be DENIED.

V.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 2nd day of June, 2010.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

*** NOTICE OF RIGHT TO OBJECT ***

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).